UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TERRANCE B. SMITH, | ) |
| Plaintiff, | ) |
| | ) No.: 3:15-CV-574-PLR-HBG |
| v. | ) |
| DERRICK SCHOEFIELD, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Acting pro se, Terrance B. Smith, an inmate confined in the Morgan County Correctional Complex, has submitted a civil rights complaint for damages under 42 U.S.C. § 1983, as well as an application for leave to proceed without payment of fees or costs. On January 11, 2015, Plaintiff filed an amended complaint [Doc. 3] naming additional defendants and eliminating claims argued in his original complaint.

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its pleading "once as a matter of course" within twenty-one days after service or twenty-one days after service of a responsive pleading or a Rule 12(b)(e) or (f) motion, whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A)(B). The docket reflects Plaintiff's motion to amend was filed within the time limits set out in the Federal Rules.

According to Local Rule 15.1, any amended complaint must be complete in itself without reference to the original complaint, as the original complaint will be superseded by the amended complaint. E.D. Tenn. L.R. 15.1. Therefore, the Court will screen Plaintiff's amended complaint according to the Prison Litigation Reform Act ("PLRA") and disregard the original complaint filed.

## I. The Filing Fee

Plaintiff's application to proceed without prepayment of fees [Doc. 2] is **GRANTED**. Nonetheless, because Plaintiff is an inmate, he is **ASSESSED** the filing fee of three hundred and fifty dollars ($350). *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). The custodian of Plaintiff's inmate trust account at the institution where he now resides shall submit, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the trust account custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350 has been paid to the Clerk's Office. *McGore,* 114 F.3d at 607.

Payments should be sent to: Clerk, USDC; 800 Market Street, Suite 130, Knoxville, Tennessee 37902. To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk is also **DIRECTED** to furnish a copy of this order to the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. Screening the Complaint

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.*, *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

In screening Plaintiff's complaint, the Court bears in mind that pro se pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, the pleading must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The "facial plausibility" standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citations and internal quotation marks omitted). The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

### III. Defendants Derrick Schoefield, David Sexton, and Steve Cantrell

No allegations of wrongdoing have been made against Defendants Derrick Schoefield, David Sexton, or Steve Cantrell. In his complaint, Plaintiff identified Defendant Schoefield as the commissioner of Tennessee, Defendant Sexton as the warden of Morgan County Correctional Complex, and Defendant Cantrell as the chaplain responsible for "the religional [sic] aspects in the prison" [Doc. 3 p. 3]. Perhaps, Plaintiff has named these individuals as defendants under the theory that they act as supervisors at the Morgan County Correctional Complex, and therefore, responsible for properly managing the staff and the operations at the jail. However, § 1983 liability must be based on more than respondeat superior, or a defendant's right to control

3

employees. *Taylor v. Migh. Dep't of Corrs.*, 69 F.3d 76, 80-81 (6th Cir. 1995). Though respondeat superior does not provide a valid basis of liability, *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981), *Monell*, 436 U.S. at 691, *Rizzo v. Goode*, 423 U.S. 362 (1976), Plaintiff can still hold Defendants Shofield, Sexton, and Cantrell liable if he can demonstrate that they implicitly authorized, approved, or knowingly acquiesced in the alleged wrongdoing of any of their subordinates, *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989), but these Defendants cannot be held liable for a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'" (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999))).

Plaintiff does not allege that Defendants Schoefield, Sexton, or Cantrell knew of the complained allegations of lack of medical treatment or unsanitary living conditions. There is nothing from which to conclude Defendants Schoefield, Sexton, or Cantrell condoned any subordinate's alleged actions or failure to act on any risks to Plaintiff's health, safety, or well-being caused by the purported treatment or conditions of confinement. Accordingly, Defendants Schoefield, Sexton, and Cantrell are, therefore, **DISMISSED** as parties in this suit.

IV. **Plaintiff's Factual Allegations**

   A. **Denial of Medical Services**

Plaintiff asserts that in "early to mid-October" of 2015, he filled out a "sick call form" complaining of "vision problems" [Doc. 3 at 3]. After "a few days" of no response, he complained to c/o Lynch who suggested that he fill out another form [*Id*.]. Plaintiff states that after the second "sick call form" was filed and he did not receive any medical attention, he complained to c/o Greene [*Id*.]. Again, after no response, Plaintiff filed two grievances at the

4

end of October "addressing [his] situation" but did not receive any written response to those grievances filed [*Id*. at 4].

In early November of 2015, a nurse came to Plaintiff's cell and drew three vials of his blood [*Id*.]. Plaintiff asserts that "[a] couple of weeks" after his blood was drawn, a nurse "gave [him] three different types of medication and left without saying what they were for." [*Id*.]. Plaintiff claims that he chose not take the medication offered at that time because he was unaware of the reasoning behind why the medication was provided to him [*Id*.]. The following day Plaintiff called the nurse back to his cell to ask her what the medication was for [*Id*.]. The nurse responded that she was unaware of the purpose of the medication prescribed and instructed him not to take the medication until she spoke with the doctor [*Id*.]. The nurse returned to Plaintiff's cell the next day to inform him that the medication is used to treat high blood sugar, high blood pressure, and kidney problems [*Id*.]. The nurse also advised Plaintiff to avoid carbs and sugar [*Id* at 5].

About two months after Plaintiff's initial filing of "sick call form[s]", Plaintiff saw "Doctor James Spall" who explained to him details of his Type 2 Diabetes diagnosis [*Id*.]. Then, on December 21, 2015, Defendant Spall placed Plaintiff on a special diet [*Id*. at 7]. Two days later Plaintiff "signed the papers for [his] special diet" [*Id*.]. However, Plaintiff complains that he didn't start receiving his special diet until December 29, 2015 [*Id*.]. Plaintiff argues that "[t]he food stewardess [ ] contributed to [his] condition by not sending [him] [his] special diet, therefore interfering with the orders of the physician" [*Id*.].

Plaintiff alleges that he was deprived immediate medical attention for his diagnosed condition of Type 2 Diabetes [*Id*.]. He complains that his eyesight has worsened as a result of the doctor not seeing him in a timely manner [*Id*.]. Additionally, Plaintiff complains that, as a

5

result of being "left unattended", he is experiencing symptoms of Type 2 Diabetes, such as, kidney problems and numbness in his hands, feet and legs [*Id.*]. Plaintiff argues that he followed the proper procedure when requesting medical attention, but did not receive timely treatment for his complaints [*Id* at 6].

Section 1983 plaintiffs bear the burden of establishing the deprivation of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). In the Eighth Amendment medical context, this requires evidence that "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, under the *Estelle* standard, "[a] constitutional claim for denial of medical care has [both] objective and subjective components." *Blackmore v. Kalamazoo Counnty*, 390 F.3d 890, 895 (6th Cir. 2004).

The objective component requires proof the inmate is suffering from a sufficiently serious medical need, such that "he [was] incarcerated under conditions posing a substantial risk of serious harm," *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To be sufficiently serious, the medical need must be either (1) obvious to a layperson or (2) supported by medical evidence, like a physician's diagnosis. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995). With regard to the former, the question is whether an average person without specialized medical training would easily recognize the need for

immediate professional treatment by observing the person or being told of his symptoms. *Johnson v. Karnes*, 398, F.3d 868, 874 (6th Cir. 2005).

The subjective component requires proof that the prison official possessed a sufficiently culpable state of mind. *Bargery*, 207 F.3d at 867. "A defendant possess[es] a sufficiently culpable state of mind when he acts with deliberate indifference." *Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005), *abrogated on other grounds in Pearson v. Callahan*, 555 U.S. 223 (2009). Conduct undertaken with "'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Karnes*, 398 F.3d at 875 (quoting *Farmer*, 511 U.S. at 836). Thus, deliberate indifference requires more than mere negligence; it requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40). To prove this subjective standard, a plaintiff must provide sufficient grounds for a reasonable juror to find that the defendant: (1) "perceived the facts from which to infer substantial risk to the prisoner," (2) "did in fact draw the inference;" and (3) "then disregarded that risk." *Id.* at 591 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Plaintiff's condition was not diagnosed as Type 2 Diabetes at the time he filed his sick call forms and in those forms his sole complaint of vision problems is not sufficiently alarming to put a person on notice of the severity of his condition. See, *Davidson v. Scully*, 155 F. Supp. 2d 77, 82 (S.D.N.Y. 2001) (finding complained of headaches, earaches, sinus congestion, soreness in his throat and eyes, tearing, and nasal infections did not constitute objectively serious medical need under the Eighth Amendment). Further, nothing in the record suggests that any Defendant had subjective knowledge of the severity of his condition or perceived the facts from which to infer substantial risk to the prisoner. In the absence of such knowledge, Plaintiff

7

attempts to focus only on the inadequacy of the treatment received when viewed in light of his subsequent diagnosis. The Sixth Circuit has made clear, however, that "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). The Constitution does not guarantee a prisoner the treatment of his choice. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). Thus, the Court finds that Plaintiff failed to establish the necessary subjective component of a deliberate indifference claim, and therefore, there is no reason for the Court to further discuss the objective element.

To the extent that Plaintiff is claiming denial of medical attention because he was first seen by a nurse rather than being examined by a doctor, the Court finds this argument invalid because although he did not see a doctor face-to-face, he did receive timely medical attention given the extent of his complained of injury. The Eighth Amendment does not entitle an inmate "to demand specific care. [An inmate] is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Fisc. v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972) (The Eighth Amendment does not require every request for medical care made by prisoner to be honored or the courts "to engage in a process of second-guessing in every case the adequacy of medical care that the state provides."). Thus, even if treatment provided fell below professional standards, which the Court does not find it did, Plaintiff's status as a prisoner does not constitutionalize the malpractice claim. *See Estelle*, 429 U.S. at 105–106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Karnes*, 398 F.3d at 875 (noting "when a prison doctor provides treatment, albeit carelessly or inefficaciously. . . he has not displayed a deliberate indifference to the prisoner's

8

needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation").

B. **Unsanitary Living Conditions**

Plaintiff alleges that his living conditions at the Morgan County Correctional Complex are "unsafe and unsanitary" [Doc. 3 p. 8]. Plaintiff asserts that mold is growing on his shower walls, and that the floor of his shower is "filthy" [*Id.*]. Plaintiff informed the Inmate Relation Coordinator ["I.R.C."] about his complaints of unsanitary living conditions and requested scrub pads and a broom to clean his cell [*Id.*]. The I.R.C. responded by stating that brushes are in fact provided to inmates for cleaning purposes but cleaning pads are not allowed in the individual units [*Id.*]. The I.R.C. stated that the toilet brush provided can be used to sweep the floors and clean the shower. [*Id.*]. Plaintiff argues that he does not use the brush provided to him because it is unsanitary [*Id.*].

As a result of living in these conditions, Plaintiff alleges that he has developed "scaly feet" [*Id.* at 9].

Plaintiff complains that he is "barely" allowed to clean his cell [*Id.*]. He states that "the only time [he] consistently get[s] to clean [his] cell[] is when c/o Greene is working, then [he] get[s] to clean [his] cell[] once a week" [*Id.*].

The Court finds that Plaintiff does not allege that any of the individual Defendants are directly responsible for or have knowledge of these conditions, nor does he assert that these conditions result from an intent to punish. Accordingly, these allegations do not raise Plaintiff's right to relief against the named individual defendants "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). As such, Plaintiff has failed to state facially

9

Case 3:15-cv-00574-PLR-HBG   Document 5   Filed 02/01/16   Page 9 of 11   PageID #: 49

plausible claims arising out of conditions of confinement against these Defendants which would entitle him to relief under § 1983.

Even if Plaintiff had asserted that the individual Defendants were somehow directly responsible for the alleged conditions of confinement, the allegations regarding the conditions at the jail are insufficient to state a claim for "[t]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman* 452 U.S. 337, 349 (1981). In claims regarding conditions of confinement, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992). An extreme deprivation is one "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), *Perryman v. Graves*, No. 3:10-MC-109, 2010 WL 4237921, at *3 (M.D. Tenn. Oct. 20, 2010) (collecting cases that stand for the assertion that an allegation of mere exposure to black mold, without additional allegations or evidence of injuries to the plaintiff's health resulting from such exposure, is insufficient to state a claim for violation of the Eighth Amendment). *See also*, *Caldwell v. George*, No. 1:14-CV-0019, 2015 U.S. Dist. LEXIS 136841, at *9 (M.D. Tenn. Oct. 7, 2015) rejecting claim based on unsanitary or uncomfortably living conditions because "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Plaintiff admits that he was provided a brush for cleaning purposes but chooses not to use it because his believe that the brush is unsanitary.

10

Case 3:15-cv-00574-PLR-HBG Document 5 Filed 02/01/16 Page 10 of 11 PageID #: 50

The Court finds that Plaintiff's claim of unsanitary living conditions, even if asserted against proper entities and/or individuals, which it is not, would fail to state a cognizable claim under § 1983.

## V. Motion to Appoint Counsel [Doc. 4]

Plaintiff filed a motion to appoint counsel requesting the Court to assign him counsel in this matter because "[his] imprisonment will greatly limit his ability to litigate" [Doc. 3]. Plaintiff states that he has limited access to the law library and limited knowledge of the law [*Id.*]. Plaintiff believes that an attorney will be better equipped to present evidence and cross examine witnesses at trial [*Id.*].

Based on the Court's dismissal of Plaintiff's claims, the Court finds Plaintiff's motion to appoint counsel is **DENIED AS MOOT**.

## VI. Conclusion

In light of the above law and analysis, the Court finds that Plaintiff's contentions fail to state § 1983 claims against Defendants and therefore, this case will be **DISMISSED** *sua sponte* in its entirety under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A.

**AN APPROPRIATE ORDER WILL FOLLOW.**

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**